UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY T. McNAMARA,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

Case No. 1:12-cv-241

Honorable Paul L. Maloney

**REPORT AND RECOMMENDATION**

This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income (SSI) benefits. On June 19, 2008, plaintiff filed his application for benefits alleging a May 12, 1963 onset of disability.[1] (A.R. 112-18). His claim was denied on initial review. (A.R. 61-64). On July 26, 2010, he received a hearing before an administrative law judge at which he was represented by counsel (ALJ). (A.R. 27-60). On October 25, 2010, the ALJ issued her decision finding that plaintiff was not disabled. (A.R. 13-21). On February 1, 2012, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, July 2008 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying his claim for SSI benefits. He asks the court to overturn the Commissioner's decision on the following grounds:

1. The ALJ "improperly discounted the evidence of the claimant's nurse practitioner[;]" and

2. The ALJ "failed to provide any basis for rejecting the opinion of plaintiff's treating physician."

(Plf. Brief at 4, 5, docket # 12). I recommend that the Commissioner's decision be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there

exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

### **Discussion**

The ALJ found that plaintiff had not engaged in substantial gainful activity on or after June 19, 2008. (A.R. 15). Plaintiff had the following severe impairments: "degenerative disc disease of the neck and back." (A.R. 15). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 17). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that the claimant can never be exposed to heights or hazards and cannot climb ladders, ropes or scaffolds. He may only occasionally stoop, kneel, crawl, balance, crouch, and climb

ramps and stairs. The claimant can only follow simple instructions and carry out routine tasks, and he can perform frequent, but not constant, handling and fingering bilaterally.

(A.R. 17). The ALJ found that plaintiff's testimony regarding his subjective functional limitations was not fully credible:

> As I noted, I do not find the claimant's allegations fully credible. His testimony was vague and often inconsistent with the evidence. He testified that his physical problems have existed for approximately 8 years, yet the earlier evidence does not document significant concerns. Instead, the majority of the claimant's records prior to 2009 deal with alcohol-related issues. He also indicated that he never used cocaine; however, when I confronted him with the record at Exhibit 2F/4 regarding testing positive for cocaine, he indicated that he could not recall using any drugs. He then questioned this finding because he read through all of the evidence in the file and did not see any positive drug tests.
>
> The claimant was paid under the table for the majority of his jobs (Hearing Testimony), and therefore, it is difficult to ascertain when his earnings might have decreased. He testified that he last worked 5 years ago, yet in Exhibit 3F/8, he wanted an MRI study because he was doing a lot of bending and standing on a cement floor. When confronted with this, the claimant stated that he was working at Smith Floral, and that he must have been working at Smith Floral when he requested the MRI. Yet, he filed his claim for benefits in June 2008 and did not mention any of the work at Smith Floral when he completed forms contemporaneously to his filing date (Exhibits 2E and 4E). Moreover, this evidence shows that he was working in July 2008, which was after the date of filing. I note that the record is unclear when the claimant stopped working and his testimony in this regard is not particularly credible.

(A.R. 19-20). Plaintiff did not have past relevant work. (A.R. 20). Plaintiff was 45-years-old on the date he filed his application for SSI benefits and was 47-years-old as of the date of the ALJ's decision. Thus, at all times relevant to his claim for SSI benefits, plaintiff was classified as a younger individual. (A.R. 20). Plaintiff has a limited education and is able to communicate in English. (A.R. 20). The transferability of job skills was not an issue because plaintiff lacked past relevant work. (A.R. 20). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 79,000 jobs in

Michigan that the hypothetical person would be capable of performing. (A.R. 54-56). The ALJ found that this constituted a significant number of jobs. Using Rule 202.17 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled.[2] (A.R. 20-21).

**1.**

Plaintiff argues that the ALJ "improperly discounted the evidence of [a] nurse practitioner," Carol Salisbury. (Plf. Brief at 4-5). He argues that the ALJ's "suggestion that a nurse practitioner is 'not an acceptable medical [s]ource' is misleading" and that it was "improper [for the ALJ] to reject such evidence without reasonable consideration." (*Id.*).

A nurse practitioner is not an "acceptable medical source." See 20 C.F.R. § 416.913(a); *see also Turner v. Astrue*, 390 F. App'x 581, 586 (7th Cir. 2010). Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and*

---

[2] Plaintiff has a history of alcohol abuse, and on many occasions, his medical care providers noted that he was severely intoxicated. (A.R. 216, 220, 271, 401, 411, 413, 429, 432-33, 436, 438, 445-49, 454-55, 460-68, 471-72, 482, 486-93, 498, 503-19, 530-34, 552, 555, 567, 571, 574, 587, 590). Since 1996, the Social Security Act, as amended, has precluded awards of SSI and DIB benefits based upon alcoholism and drug addiction. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004). The claimant bears the burden of demonstrating that substance abuse was not a factor contributing to his disability. *See Cage v. Commissioner*, 692 F.3d 118, 122-25 (2d Cir. 2012); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004). Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether substance abuse was material to a finding of disability. *See Gayheart v. Commissioner*, 710 F.3d at 380.

*Nongovernmental Agencies*, SSR 06–3p (reprinted at 2006 WL 2329939, at * 2 (SSA Aug. 9, 2006)). The opinions of a nurse practitioner fall within the category of information provided by "other sources." *Id.* at * 2; *see* 20 C.F.R. § 416.913(d). The social security regulations require that information from other sources be "considered." 2006 WL 2329939, at * 1, 4 (citing 20 C.F.R. §§ 416.912, .927). This is not a demanding standard, and it was easily met here.

Plaintiff is treated at the Ingham County Health Department's Infectious Disease Clinic for HIV infection. "[H]is virus is completely under control and nondetectable." (A.R. 394). On June 2, 2010, Nurse Salisbury, a treating nurse practitioner at the Ingham County Health Department, wrote a letter "To Whom It May Concern." (A.R. 394). Her letter is not a model of clarity, but she appears to endorse a "short-term" finding of disability which would allow plaintiff to obtain insurance and have surgery addressing degenerative changes in his cervical spine:

> The patient's major issues are concerning his neuropathies and degenerative changes that were noted per MRI performed on 04/26/10, with a significant disk uncovertebral joint and facet degenerative change with a broad based disk extrusion at the C5-C6 which does compromise the spinal cord. This impresses the spinal cord severely, compromising the recesses in the foramina. This had led to significant neuropathic pain, decrease in strength, and tingling and loss of sensation on his left arm and hand.
>
> He currently has been referred to the spinal clinic, but he has no insurance. He has the Ingham Health Plan, so he probably will not have sufficient funds and will not be able to undergo surgery for this issue which will continue to create an ongoing problem with his strength and mobility in his upper extremity.
>
> I think that disability for this patient, at least in a short-term approach to do a corrective surgery, would be advisable.

(A.R. 394).

The ALJ was well aware of the objective test results regarding the degenerative changes in plaintiff's spine and accommodated that impairment in her RFC finding limiting plaintiff

to a range of light work. (A.R. 17-18). The MRI taken of plaintiff's thoracic spine on April 26, 2010, returned normal results. (A.R. 309). The MRI of his cervical spine showed disc displacement at C5-C6 and degenerative changes at other levels. (A.R. 312-13).

The ALJ considered the additional objective tests performed after Ms. Salisbury wrote her letter and determined that plaintiff's RFC should include a limitation of frequent, but not constant, handling and fingering:

> Records indicate that the claimant undergoes monthly B12 injections, which the claimant reported help his peripheral neuropathy/numbness (Exhibit 11F/44). After the hearing was scheduled, the claimant underwent EMG studies of his arms and legs (Exhibit 24F). Treatment records indicate that in July 2010, the claimant had no tenderness of any joint and had normal gait, normal strength of his legs, and symmetrical reflexes (Exhibit 24F/11). The EMG study of the claimant's legs was also negative (Exhibit 24F/5). In June 2010, the claimant also did not have any tenderness and had a normal gait, normal strength of the arms, and symmetrical reflexes (Exhibit 24F/11). The only abnormal finding was decreased sensation in the left ulnar nerve distribution (Exhibit 24F/11). The EMG of the claimant's arms was abnormal, showing findings consistent with his history of injury to his left ulnar nerve some time ago (Exhibit 24F/11). However, the EMG study regarding the claimant's right arm was normal, with no evidence of cervical radiculopathy or peripheral neuropathy (Exhibit 24F/11). The claimant is right-handed (Hearing Testimony). I have accommodated [] these findings in the residual functional capacity by limiting the claimant to frequent, but not constant, handling and fingering bilaterally.

(A.R. 19). It was against this background that the ALJ considered the opinions of Nurse Practitioner Salisbury and found that they were entitled to no weight:

> As for the opinion evidence, in June 2010, nurse practitioner Carol Salisbury, who is not an acceptable medical source as set forth in 20 CFR 416.913, opined that short-term disability was advisable (Exhibit 12F). Whether an individual is disabled under the Social Security Act is an issue reserved to the Commissioner (SSR 96-5p), and the suggestion that the claimant needs short-term disability implies that the problem is not expected to last. I note that Ms. Salisbury's concerns appear to be with the fact that the claimant does not have insurance rather than his functioning. Therefore, I find that Ms. Salisbury's opinions are entitled to no weight.

(A.R. 19). The issue of disability is reserved to the Commissioner. 20 C.F.R. § 416.927(d)(1). The ALJ gave more than adequate consideration to Nurse Practitioner Salisbury's opinions. I find that the ALJ correctly applied the law and her factual finding regarding plaintiff's RFC is supported by more than substantial evidence.

**2.**

Plaintiff argues that the ALJ "failed to provide any basis for rejecting the opinion of [his] treating physician," Peter Gulick, M.D. (Plf Brief at 5-6). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. § 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling, deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported

by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability

benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

Plaintiff filed very few records from Dr. Gulick in support of his claim for SSI benefits. The only progress notes from Dr. Gulick are dated November 24, 2009, and April 20, 2010. (A.R. 338-39, 348-49). On November 24, 2009, plaintiff stated that B12 injections were helping address his peripheral neuropathy symptoms. Plaintiff's judgment and insight, orientation to time place, person, mood and affect, and recent and remote memory were all unremarkable. Plaintiff received a B12 injection and was advised to follow-up with Nurse Salisbury. (A.R. 348-49). On April 20, 2010, plaintiff complained of increasing pain and numbness in his hands. Dr. Gulick noted that the MRI taken of plaintiff's spine in October 2008 had returned normal results. Dr. Gulick observed that plaintiff was alert and oriented in all three spheres. (A.R. 338-39).

On July 13, 2010, Dr. Gulick completed portions of a "Physical Residual Functional Capacity Questionnaire." (A.R. 395-99). He did not specify any limitations on plaintiff's ability to sit, stand, or walk. (A.R. 399). He stated that plaintiff's pain or other symptoms would frequently be severe enough to interfere with attention and concentration needed to perform even simple work tasks, without providing any further explanation. He stated that plaintiff was capable of performing low stress jobs. (A.R. 396). He offered an opinion that plaintiff was likely to be absent from work "more than four days per month" as a result of impairments or treatment. (A.R. 399).

-10-

The ALJ indulgently treated Dr. Gulick's opinions as those of a treating physician.[3] She found that Dr. Gulick's opinions regarding plaintiff's limitations arising from mental impairments were generally entitled to little weight because they were not consistent with the objective evidence. (A.R. 19). Her factual finding regarding plaintiff's RFC did include a restriction limiting him to work that required the ability to follow simple instructions and carry out routine tasks in recognition of his complaints of pain and use of pain medication:

> Dr. Peter Gulick partially completed the Physical Residual Functional Capacity Questionnaire contained in Exhibit 12F. He indicated that the claimant's pain constantly interferes with attention and concentration, but he did not impose any other limitations, and instead referred the claimant to a rehab facility (Exhibit 12F). He concluded that the claimant would be absent more than 4 days per month as a result of his impairment or treatment (Exhibit 12F). I find that Dr. Gulick's opinions are entitled to little weight, as they are not consistent with the objective evidence of record. Significant problems with attention and concentration are not documented in the record. However, based upon the claimant's reports of pain and pain medications in the objective records, I give limitations of simple instructions and performing only routine tasks in the above residual functional capacity.

(A.R. 19). Dr. Gulick's opinions were not well-supported by objective evidence. Plaintiff had not engaged in substantial gainful activity at any time during the period at issue: June 19, 2008, through October 25, 2010. Gulick's statement that plaintiff would miss more than four days of work per month was conjecture, not a medical opinion. *See Murray v. Commissioner*, 1:10-cv-297, 2011 WL 4346473, at * 7 (W.D. Mich. Aug. 25, 2011) (collecting cases). I find no violation of the treating physician rule.

---

[3] A physician who sees a patient for only two or three visits "often" lacks a sufficient ongoing treatment relationship to be considered a treating physician. *See Kornecky v. Commissioner*, 167 F. App'x 496, 507 (6th Cir. 2006); *see also* 20 C.F.R. §§ 416.902, .927(d)(2). Although plaintiff received most of his treatment at the Ingham County Health Department from Nurse Practitioner Salisbury rather than Dr. Gulick, the ALJ considered Dr. Gulick's opinions as the opinions of a treating physician. (A.R. 18-19).

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: September 5, 2013      /s/ Joseph G. Scoville
                              United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).